UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


TRACY BARRIOS                                              CIVIL ACTION

VERSUS                                                     NO. 18-13943

NEW ORLEANS & GULF COAST                                   SECTION M (5)
RAILWAY COMPANY


## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendant New Orleans & Gulf Coast Railway Company ("NOGC").[1] Plaintiff Tracy Barrios opposes the motion.[2] NOGC replies in support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.  BACKGROUND**

This case arises out of injuries allegedly sustained by Barrios while working as a track laborer for NOGC on August 20, 2018.[4] The NOGC Track Department is responsible for maintaining the track on the NOGC railroad, which runs between Gretna and Belle Chase, Louisiana.[5] On August 20, 2018, Johnny Hydes, the NOGC Track Department "Roadmaster" (superintendent), sent Barrios and another track laborer, Tim Garza, to change an 11-foot piece of steel rail which had been reported to be broken.[6] Barrios and Garza attempted, but were unable, to operate a telescopic crane attached to a pickup truck to lift a replacement rail out of

---

[1] R. Doc. 23.
[2] R. Doc. 25.
[3] R. Doc. 31.
[4] R. Doc. 1.
[5] R. Doc. 25 at 2.
[6] *Id.* at 2-3.

the truck's bed.[7] According to Garza, he then called Humberto Zermeno, the track foreman who supervises the track laborers but was not there that day, to ask how to proceed.[8] The track laborers did not have other equipment for the task at the site, nor did they ask for any.[9] NOGC states that it had several other pieces of allegedly suitable equipment, including a backhoe, grapple truck, dump truck, forklift, and rail tongs, but these were usually kept at the Belle Chasse Yard, ten miles south of the Gouldsboro Yard in Gretna, where Barrios and Garza were located.[10] Barrios and Garza decided to manually move the replacement rail.[11] That afternoon, Garza informed Hydes that the crane was not functioning, and Hydes and Zermeno tested it the following day.[12] According to Zermeno, the crane was working properly, though this was not documented.[13] On September 4, 2018, NOGC had the crane inspected by Universal Engine & Automotive, who found it operating properly.[14]

As part of its regular business practice, NOGC had Barrios complete a handwritten statement concerning the August 20, 2018 events,[15] and Garza do the same on August 24, 2018.[16] Barrios filed an employee personal injury report on August 28, 2018.[17] He claims that he sustained injuries to his neck, cervical spine, and shoulders while manually moving the rail, and that these injuries were the result of NOGC's negligent failure to provide him a reasonably safe place to work, in violation of the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.*

---

[7] R. Docs. 23-1 at 1; 23-2 at 1-2.
[8] R. Docs. 25 at 3; 25-3 at 4. Zermeno testified in his deposition that he does not recall this conversation. R. Doc. 31-1 at 3. Barrios also testified that they did not consult with Hydes or anyone else before physically moving the rail. R. Doc. 23-4 at 7.
[9] R. Doc. 23-4 at 6, 12-31.
[10] R. Docs. 23-2 at 1; 23-4 at 12-13; 23-7 at 4; 25-2 at 9.
[11] R. Docs. 23-1 at 1; 23-4 at 7; 23-6 at 4.
[12] R. Docs. 23-9 at 5; 25-3 at 6-7.
[13] R. Doc. 25-3 at 7.
[14] R. Doc. 23-10 at 2.
[15] It is unclear but appears that Barrios's statement was completed on Thursday, August 23, 2018. *See* R. Doc. 25-7.
[16] R. Docs. 25 at 8; 25-7; 25-8.
[17] R. Doc. 23-8.

("FELA").[18]

## II. PENDING MOTION

NOGC argues that Barrios's "FELA claim must fail because there is no evidence that NOGC acted negligently or that [his] injury was caused by anything other than his own negligence and violation of NOGC safety rules."[19] NOGC explains that first, Barrios has not articulated a particular defect with the crane or presented any evidence to support his contention that it was not operational on August 20, 2018.[20] NOGC maintains that the crane had been certified as operating pursuant to federal regulations as a result of its annual inspections at Superior Sales & Service, and that Universal Engine & Automotive found it functioning correctly on September 4, 2018.[21] Second, NOGC asserts that even if the crane was not operating properly, it still did not breach any duty to Barrios because it "provided him with several other alternative pieces of equipment to physically move the replacement rail."[22] NOGC explains that it is not required to "furnish the 'best' or 'latest' equipment, but rather equipment and work procedures that are <u>reasonably</u> safe."[23] Finally, NOGC argues that Barrios's injuries are "solely the result of his own fault."[24] Barrios and Garza decided to manually move the rail on their own, without direction from a supervisor, despite the availability of alternative equipment.[25] NOGC asserts that Barrios violated NOGC safety rules by not "maintain[ing] a safe course of action" or "obtain[ing] additional help or mechanical assist device(s) to lift or

---

[18] R. Doc. 1 at 2-3.
[19] R. Doc. 23-2 at 5.
[20] *Id.* at 6.
[21] *Id.* at 6-7.
[22] *Id.* at 7-8.
[23] *Id.* at 9 (emphasis in original) (citing *Atl. Coast Line R.R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951)).
[24] *Id.*
[25] *Id.*

handle heavy or awkward objects."[26] It adds that he violated NOGC's General Code of Operating Procedures by failing to report any problems with the crane to NOGC either before or after he injured himself on August 20, 2018.[27] Accordingly, his decision to move the rail in violation of the rules and procedures was the "sole cause of his injuries."[28]

Barrios responds by emphasizing that a FELA claim should be dismissed on summary judgment only "when there is a complete absence of probative facts supporting the [p]laintiff's position."[29] He maintains that an employer's duty to provide a safe place to work under FELA is continuous and broader than a general duty of care, that the foreseeability element for negligence under FELA is more relaxed than under common law, that the causation standard is a "featherweight test," and that FELA is construed liberally.[30] Barrios argues that there are genuine issues of material fact as to whether the crane was functioning that day, as both he and Garza have consistently stated and testified that it was not; whether NOGC had actual knowledge that the crane was defective before the incident, as there is evidence it was repaired and malfunctioning before August 20, 2018; whether NOGC owned other mechanical equipment that could have been brought to Gretna and made available to Barrios; whether NOGC should have planned the work to use such equipment; whether NOGC was negligent for not supervising Barrios and Garza; and whether Barrios caused or contributed to his own injuries.[31] Barrios adds that NOGC's burden to show that his actions were the sole cause of his injuries is "extremely high" under FELA.[32] These disputed issues should all, therefore, be sent to a jury, according to

---

[26] *Id.* at 10. NOGC also asserts that Barrios violated the rules by not conducting a job briefing before the task, but Garza testified that they did. *See* R. Doc. 23-6 at 3.
[27] R. Doc. 23-2 at 10.
[28] *Id.*
[29] R. Doc. 25 at 2 (quoting *McCormick v. New Orleans Pub. Belt R.R. Comm'n*, 2017 WL 2267204, at *3 (E.D. La. May 24, 2017) (quoting *Howard v. Canadian Nat'l/Ill. Cent. R.R.*, 233 F. App'x 356, 357-58 (5th Cir. 2007))).
[30] *Id.* at 6-7.
[31] *Id.* at 8-12.
[32] *Id.* at 12-14.

Barrios.

In reply, NOGC reiterates most of its previous arguments. It notes that, contrary to Barrios's assertion, there is no evidence that Zermeno "instructed" Garza to manually move the replacement rail.[33] It argues that unlike the decades-old case cited by Barrios, in which the Seventh Circuit held that a railroad could still be liable under FELA even if a plaintiff ignores the defective condition of equipment which later causes injury, here, the "allegedly 'defective' crane did not cause Plaintiff's injuries."[34] Rather, Barrios's decision to move the rail did. NOGC adds that it did not fail to adequately supervise Barrios and Garza, as this was a familiar task and so there was no reason for Hydes to be physically present with them, and furthermore, they had radios to communicate with Hydes if they required assistance or additional equipment.[35]

## III.  LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits

---

[33] R. Doc. 31 at 3.
[34] *Id*. at 5 (discussing *McCarthy v. Penn. R.R. Co.*, 156 F.2d 877 (7th Cir. 1946)).
[35] *Id*. at 6.

supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625

(5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. FELA**

Under FELA, a railroad employee may recover damages for "injury or death resulting in whole or in part from the negligence" of the railroad company. 45 U.S.C. § 51. "FELA provides the exclusive remedy for a railroad employee engaged in interstate commerce whose injury resulted from the negligence of the railroad." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 416 (5th Cir. 2012) (citing *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004)). To prevail under FELA, "a plaintiff must prove: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Johnson v. Clark Gin Serv., Inc.*, 2017 WL 2123846, at *8 (E.D. La. May 12, 2017) (citing *Weaver v. Mo. Pac. R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998) (quoting *Smith v. Med. & Surg. Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir. 1997))). A railroad has a duty under FELA to provide its employees with a reasonably safe work environment. *McCormick*, 2017 WL 2267204, at *2 (citing *Huffman*, 675 F.3d at 417). It breaches its duty if it "knew, or by the exercise of due care should have known that its conduct was inadequate to protect the plaintiff and similarly situated employees." *Huffman*, 675 F.3d at 417 (quoting *Urie v. Thompson*, 337 U.S. 163, 178 (1949)) (internal quotation marks and

brackets omitted). The standard of care is that of "ordinary prudence under the circumstances." *Id.* at 418 (citing *Gautreaux v. Scurlock Marine Inc.*, 107 F.3d 331, 338-39 (5th Cir. 1997)).

A FELA plaintiff must prove the traditional elements of negligence, *i.e.*, duty, breach, causation, and damages. *Johnson*, 2017 WL 2123846, at *8-9. "'Reasonable foreseeability of harm' … is … 'an essential ingredient of FELA negligence.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (quoting *Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963)) (emphasis and brackets omitted). Therefore, if a railroad company would have "'no reasonable ground to anticipate that a particular condition would or might result in a mishap and injury, then the [railroad company] is not required to do anything to correct the condition.'" *Id.* (quoting *Gallick*, 372 U.S. at 118 n.7) (brackets and ellipsis omitted). FELA departs from the traditional principles of negligence by relaxing the standard of causation. *McCormick*, 2017 WL 2267204, at *2. "Under FELA, a defendant railroad caused or contributed to a railroad worker's injury if the railroad's negligence played a part – no matter how small – in bringing about the injury." *Huffman*, 675 F.3d at 417 (quoting *CSX Transp. Inc.*, 564 U.S. at 692) (internal quotation marks and brackets omitted); *see Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). If this "very low" causal standard is shown, *McCormick*, 2017 WL 2267204, at *2, then the railroad is "answerable in damages even if 'the extent of the injury or the manner in which it occurred' was not 'probable' or 'foreseeable.'" *CSX Transp. Inc.*, 564 U.S. at 704 (quoting *Gallick*, 372 U.S. at 120-21 & n.8). Importantly, a jury has "significantly broader" power to engage in inferences in FELA cases than in other negligence actions, *Howard*, 233 F. App'x at 357, and may even "infer causation from unexplained events." *Rivera*, 378 F.3d at 510 (quoting *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (internal citation omitted)).

"Due to the liberal construction and interpretation of FELA claims, a plaintiff's FELA claim should only be dismissed on summary judgment 'when there is a complete absence of

8

probative facts supporting the plaintiff's position." *McCormick*, 2017 WL 2267204, at *3 (quoting *Howard*, 233 F. App'x at 357-58). The plaintiff's burden of proof under FELA is "featherweight" and stands in contrast to that in other civil cases in which "[a] mere scintilla of evidence is insufficient to present a question for the jury." *Howard*, 233 F. App'x at 357 (citations omitted). In part, FELA was enacted "to secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions." *Id.* (citation omitted). In other words, "trial by jury is part of the remedy in FELA cases." *Id.* (citation omitted); *see also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360 (1962).

### C. Analysis

NOGC first argues that summary judgment is warranted because Barrios cannot establish that the crane was defective on the day he was injured.[36] With the jury's broad power to draw inferences under FELA in mind, however, the Court cannot say that Barrios has not provided sufficient evidence for a jury to conclude that the crane was defective on August 20, 2018. Both Barrios and Garza testified that they were unable to operate the crane that day. They both stated the same in their handwritten statements completed soon after. Hydes testified that Garza told him the crane was not working on the day of the incident. As NOGC itself points out, Barrios had completed an examination on operating cranes such as the one in question,[37] and so a jury could infer that if he could not operate it on the day of the incident, this may have been because it was defective. Barrios and Garza also testified that the crane periodically would not work, and Barrios has presented evidence of repairs to the crane that year. On the other hand, Zermeno testified that he was able to operate the crane properly on August 21, 2018, and that Universal Engine & Automotive determined it was functioning correctly during its September 4, 2018

---

[36] R. Doc. 23-2 at 6.
[37] *See* R. Doc. 23-5.

inspection. Viewing the evidence in the light most favorable to Barrios, there is a genuine issue of material fact as to whether the crane was defective on August 20, 2018.

Next, NOGC argues that whether or not the crane was defective, it did not breach its duty to Barrios because it provided several other alternative pieces of equipment to move the rail. NOGC points to *McGivern v. Northern Pacific Railway Co.*, in which a railroad-employee was fatally injured after he slipped on accumulated snow and ice on a footboard of a switch engine. 132 F.2d 213, 215-16 (8th Cir. 1942). The Eighth Circuit held that "[t]he defendant could not anticipate that [the employee] would not exercise proper care for his own safety," especially since the defendant had made several tools available on the engine to remove the snow and ice. *Id.* at 218-19. The plaintiff had complained that these tools were either not the best fit for the task or not conveniently located, to which the Eighth Circuit responded that the "employer is not required to furnish the newest or even the safest and most approved devices" and that these tools "were in general use and met with general approval for the performance of this work." *Id.* at 218. The Eighth Circuit has later explained that in *McGivern*, "there was nothing shown by which the railroad could have lessened the danger resulting from the snow," since other instruments "were available to improve the conditions." *Chi. & N.W. Ry. Co.*, 326 F.2d 329, 333 (8th Cir. 1964).

NOGC, however, has not conclusively shown that it "*could not* anticipate that [Barrios] would not exercise proper care for his own safety"; therefore, it "could be [found] negligent for *unreasonably* failing to anticipate carelessness on the part of [Barrios]." *See Dohse v. Norfolk S. Ry. Co.*, 2015 WL 13670877, at *2 (N.D. Ind. Feb. 26, 2015) (interpreting *McGivern*) (emphasis in original). First, NOGC has not established that the alternative equipment it enumerates was located at its yards on August 20, 2018. Second, Zermeno testified that this equipment would have been located ten miles away from Barrios and Garza's work site. Thus, unlike the merely

10

inconveniently placed equipment in *McGivern*, the allegedly-available tools were probably a significant distance from the laborers when they needed them. A jury could infer that NOGC was negligent in sending employees to change a rail with a malfunction-prone and/or defective crane without readily-available alternative equipment. In other words, a jury could determine that NOGC ***could*** have lessened the danger of a defective crane or the possibility of its laborers completing an onerous task manually by ensuring its laborers had the other equipment available on-site or nearby. This is especially because "a jury may infer that [a dangerous] workplace condition could have been discovered by the defendant railroad at any time prior to the injury through the exercise of reasonable care or inspection." *Spencer v. Norfolk S. Ry. Co.*, 450 S.W.3d 507, 511 (Tenn. 2014) (citing *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 431 (6th Cir. 2010) (quoting *Miller v. Cincinnati, New Orleans & Tex. Pac. Ry.* 317 F.2d 693, 695 (6th Cir. 1963))).

There is also a genuine dispute over whether it was negligent for NOGC to send Barrios and Garza to replace the rail without more supervision. Zermeno testified that it was not customary to do so, while Hydes testified to the contrary.[38] While there is a dispute over whether Garza spoke to Zermeno before the two track laborers moved the rail, the Court observes that Barrios has not presented any evidence that they were "instructed" to manually move the rail.[39] Regardless, there is sufficient evidence to present to the jury the question of negligence concerning supervision.

Finally, NOGC argues that Barrios's decision to manually move the rail, which it alleges

---

[38] R. Docs. 25-2 at 10; 25-3 at 8-9.
[39] Garza stated that Zermeno told them to move the rail "the easiest way [they] can do it." R. Doc. 25-4 at 9. Barrios has not shown that "the easiest way" unequivocally meant moving it manually, and so does not amount to an "instruction." Barrios testified that they did not consult with anyone else before moving the rail and that they thought they were "get[ting] the job done the best way [they] could with what [they] had." R. Doc. 23-4 at 7. Garza also testified that they "took it upon [themselves] to high rail, take the rail off the way [they] wanted to." R. Doc. 23-6 at 4.

11

violated its safety policies, was the sole cause of his injuries. As the Sixth Circuit has explained, even when an employee's method of accomplishing a given task is "an important factor in the accident, and even if some minds might conclude that it was the sole factor, the jury may consider evidence that employer negligence played some part in producing the injury." *Padgett v. S. Ry. Co.*, 396 F.2d 303, 307 (6th Cir. 1968) (internal quotation marks and citation omitted). That Barrios's injuries were not directly caused by any alleged defect in the crane is inapposite. A jury may find that NOGC was negligent in not providing Barrios with functioning and readily-available equipment for his assigned task and/or in not providing more supervision, and that this negligence contributed, at least in part, to Barrios's injury. Under FELA, even when a plaintiff may have contributed to his injury, "[i]f [employer] negligence is proved … and is shown to have *played any part, even the slightest, in producing the injury*," the railroad may be held liable in damages. *CSX Transp. Inc.*, 564 U.S. at 703 (emphasis in original) (internal quotation marks and citation omitted). There is sufficient evidence for a jury to be given the question whether this extremely low standard of causation is satisfied.

In sum, there are disputed issues of material fact concerning the issues of negligence and comparative fault that must be resolved by a jury.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that NOGC's motion for summary judgment (R. Doc. 23) is DENIED.

New Orleans, Louisiana, this 2nd day of December, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE